# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ROBERT STREET | ) Civil Action No. _____ |
| | ) |
|     Plaintiff, | ) |
| | ) **COMPLAINT** |
|     v. | ) (Jury Trial Demanded) |
| | ) |
| SCOLNICK, LAVERTY & GOUVEIA, LLP, | ) |
| GM HIGHLAND HOUSE LLC, | ) |
| GM MC HIGHLAND HOUSE LLC, and | ) |
| CT MANAGEMENT LLC | ) |
| | ) |
|     Defendants. | ) |

_____

## INTRODUCTION

1. Plaintiff Robert Street is an 81-year-old elder on a fixed income. Mr. Street's landlord[1] falsely charged him, month after month, for rent that he had already paid. Mr. Street's landlord then hired a law firm[2] that attempted to evict Mr. Street, on the landlord's behalf, via an eviction lawsuit brought for non-payment of rent that was not actually owed. The landlord's own records showed that payment for Mr. Street's contract rent was received in full for all of the months that the landlord and its law firm alleged that Mr. Street was behind on rent. Mr. Street's alleged rental arrears also included non-rent fees. These were illusory and could not be lawfully recovered in an eviction lawsuit for non-payment of rent. Despite Mr. Street's attempts to bring the errors to his landlord's and their counsel's attention, it took nine (9) months and the intervention of Mr. Street's own lawyer before the landlord and their counsel dropped the meritless lawsuit against him.

---

[1] Defendants GM Highland House LLC, GM MC Highland House LLC, and CT Management LLC.

[2] Defendant Scolnick, Laverty, & Gouveia LLP, one of the most active eviction law firms in the Commonwealth.

During this time, Mr. Street experienced enormous distress, day after day. He believed that he would be forcibly removed from his home, lose his housing subsidy, and end up homeless, all due to false allegations of unpaid rent. To this day, the landlord still alleges unpaid rent that Mr. Street does not owe. Altogether, the actions of the Mr. Street's landlord and their counsel have caused Mr. Street significant harm.

2. Through these and other unlawful acts described herein, the law firm engaged by Mr. Street's landlord violated his rights under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and Mr. Street's landlord violated his rights under the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

3. Mr. Street thus seeks monetary, declaratory, and injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the Plaintiff's federal and state law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

5. The Plaintiff is entitled to declaratory relief, as well as other relief deemed necessary and proper, pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Plaintiff, and at least one Defendant, are residents of this District, and the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

7. Plaintiff Mr. Street:

   a. Mr. Street is an individual who resides in Randolph, Massachusetts.

b. Mr. Street is a long-term tenant of 11 Highland Glen Drive, Apartment 31, in Randolph, Massachusetts. This unit that is part of a 172-unit residential real estate development known as "Highland House Apartments."

c. Mr. Street is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3), because Defendants alleged that he accrued past due rent for his primary residence, which is a debt for personal, family, or household purposes.

d. Mr. Street is also a "debtor" within the meaning of 940 CMR 7.03 because Defendants alleged that he was personally liable for a consumer debt incurred primarily for personal, family, or household purposes.

8. Defendant GM Highland House LLC:

a. GM Highland House LLC is a corporate entity, a limited liability company, organized under the laws of the State of New Jersey, with a principal place of business at 1985 Cedar Bridge Avenue, Suite 5, Lakewood, New Jersey 08701.

b. GM Highland House LLC is registered as a foreign corporation with the Massachusetts Secretary of State with a Massachusetts office located at 41 Highland Avenue, Randolph, Massachusetts 02368.

c. Elizabeth Potash, of 41 Highland Avenue, Randolph, Massachusetts 02368, is the resident agent of GM Highland House LLC.

d. Mordechai Sternstein, of 1985 Cedar Bridge Avenue, Suite 5, Lakewood, NJ 08701, is the manager of GM Highland House LLC.

e. GM Highland House LLC is a partial deed owner and a lessor of Highland House Apartments, the residential real estate development where Mr. Street lives.

    f.   GM Highland House LLC was one of two corporate plaintiffs who brought an eviction case against Mr. Street, a summary process action brought in the Metro South Housing Court titled *GM Highland House LLC and GM MC Highland House LLC v. Robert Street*, docket number 24H82SP02884.

    g.   GM Highland House LLC is a creditor within the meaning of 940 CMR 7.01 and Mass. Gen. Laws c. 93, § 49, in that it is "engaged in collecting a debt owed or alleged to be owed to it by a debtor."

9.   Defendant GM MC Highland House LLC:

    a.   GM MC Highland House LLC is a corporate entity, a limited liability company, organized under the laws of the State of New Jersey, with a principal place of business at 415 Cedar Bridge Avenue, Suite 8, Lakewood, New Jersey 08701.

    b.   GM MC Highland House LLC is registered as a foreign corporation with the Massachusetts Secretary of State with a Massachusetts office located at 11 Highland Glen Drive, Randolph, Massachusetts 02368.

    c.   GM Highland House LLC, of 11 Highland Glen Drive in Randolph, Massachusetts 02369, is the resident agent of GM MC Highland House LLC.

    d.   Mordechai Sternstein, of 1985 Cedar Bridge Avenue, Suite 5 in Lakewood, NJ 08701, is the manager of GM MC Highland House LLC.

    e.   GM MC Highland House LLC is a partial deed owner and a lessor of Highland House Apartments, the residential real estate development where Mr. Street lives.

    f.   GM MC Highland House LLC was one of two corporate plaintiffs who brought an eviction case against Mr. Street, a summary process action brought in the

Metro South Housing Court titled *GM Highland House LLC and GM MC Highland House LLC v. Robert Street*, docket number 24H82SP02884.

g. GM MC Highland House LLC is a creditor within the meaning of 940 CMR 7.01 and Mass. Gen. Laws c. 93, § 49, in that it is "engaged in collecting a debt owed or alleged to be owed to it by a debtor."

10. Defendant CT Management LLC:

a. CT Management LLC is a corporate entity, a limited liability company, organized under the laws of the State of New Jersey with a principal place of business in Lakewood, New Jersey.

b. CT Management LLC is not registered as a foreign corporation with the Massachusetts Secretary of State.

c. Mordechai Sternstein, of 1985 Cedar Bridge Avenue, Suite 5, Lakewood, NJ 08701, and the manager of both GM Highland House LLC and GM MC Highland House LLC, is a principal of CT Management LLC.[3]

d. Upon information and belief, CT Management LLC exercises management, control, and direction over GM Highland House LLC and GM MC Highland House LLC, the owners and lessors of "Highland House Apartments," the residential development where Mr. Street lives.[4]

e. CT Management LLC, acting through its agents, GM Highland House LLC and GM MC Highland House LLC, is a creditor within the meaning of 940 CMR 7.01

---

[3] The public website for CT Management LLC lists Mr. Sternstein, under the name Max Sternstein, as the "founder and CEO" of the company. The website can be accessed here: https://ctmgllc.com/team/
[4] The public website for CT Management LLC lists Highland House Apartments in Randolph, Massachusetts within its portfolio of properties. The website can be accessed here: https://ctmgllc.com/properties/

and Mass. Gen. Laws c. 93, § 49, in that it is "engaged in collecting a debt owed or alleged to be owed to it by a debtor."

11. Defendant Scolnick, Laverty & Gouveia, LLP:

    a.  Scolnick, Laverty & Gouveia, LLP is a corporate entity, a limited liability partnership, organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 25 Braintree Hill Office Park, Suite 205, Braintree, MA 02184.

    b.  Attorney Lisa Gouveia of 25 Braintree Hill Office Park, Suite 205, Braintree, MA 02184 is the resident agent of Scolnick, Laverty & Gouveia, LLP.

    c.  Scolnick, Laverty & Gouveia, LLP is a law firm that has maintained hundreds (if not thousands) of cases alleging non-payment of rent in various departments of the Housing Court across the Commonwealth, including dozens against residents of Highland House Apartments, in many of which Scolnick, Laverty & Gouveia, LLP directly identified that it was "attempt[ing] to collect a debt" in its eviction notices.[5]

---

[5] A review of public filings across departments of the Housing Court in the Commonwealth reveals Scolnick, Laverty & Gouveia, LLP as counsel of record in hundreds of cases brought for non-payment of rent. Specifically, with regard to residents at Highland House Apartments, taken as but small sample of the total cases that this law firm brings statewide, Scolnick, Laverty & Gouveia, LLP publicly filed eviction notices, alleging various amounts of unpaid rent, in which it directly identifies itself as collecting a debt.

For example, eviction notices in which Scolnick, Laverty & Gouveia, LLP identifies itself as attempting to collect a debt appear on the public court docket in the following cases, which this Court may take judicial notice of:

> ➢ *GM Highland House LLC and GM MC Highland House LLC v. Denzil Irish*, Metro South Housing Court docket no. 24H82SP00393;
> ➢ *GM Highland House LLC v. Tricia Duntin,* Metro South Housing Court docket no. 24H82SP00236;
> ➢ *GM Highland House LLC and GM MC Highland House LLC v. Shardee Burston,* Metro South Housing Court docket no. 24H82SP00401;
> ➢ *GM Highland House LLC and GM MC Highland House LLC v. Jalisa Bramble and Romal Andrew Bramble,* Metro South Housing Court docket no. 24H82SP00234; and,
> ➢ *GM Highland House LLC and GM MC Highland House LLC v. Dianne Benner*, Metro South Housing Court docket no. 24H82SP01839.

    d.   Scolnick, Laverty & Gouveia, LLP caused to be served and filed an eviction complaint against Mr. Street, a summary process action brought in the Metro South Housing Court titled *GM Highland House LLC and GM MC Highland House LLC v. Robert Street*, docket number 24H82SP02884, a case which sought to collect alleged unpaid rent.

    e.   Scolnick, Laverty & Gouveia, LLP is a "debt collector" within the meaning of 15 U.S.C. § 1692(a)(6) because it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

12. Defendants GM Highland House LLC, GM MC Highland House LLC, and CT Management LLC shall hereafter be collectively referred to as "Property Manager Defendants."

13. Defendant Scolnick, Laverty & Gouveia, LLP shall hereafter be referred to as "SLG LLP."

## **STATEMENT OF FACTS**

*Mr. Street's Residency at Highland House Apartments*

14. Mr. Street has lived at Highland House Apartments, a residential complex owned, leased, and/or managed by the Property Manager Defendants, since approximately 2009.

15. Mr. Street's only income is retirement income from the Social Security Administration.

16. Mr. Street has various health conditions and physical limitations, attendant to age and chronic illness, which substantially limit one or more major life areas.

17. Mr. Street rents his home through assistance from the federal Section 8 Housing Choice Voucher Program (hereafter the "Section 8 Program"), funded by the U.S. Department of Housing and Urban Development. The Section 8 Program subsidizes private market

housing for low-income individuals. It does this by entering into agreements with tenants and landlords to pay a certain portion of a tenant's total contract rent based on that tenant's income. The tenant's share of the total contract rent is recalculated from time to time; however, the total contract rent payable to the landlord does not change simply because the tenant's share changes.

18. The owners and lessors of the property, GM Highland House LLC and GM MC Highland House LLC, acting as agents for CT Management LLC, have entered into such a contract with the Boston Housing Authority to receive payments from the Section 8 Program.

19. Mr. Street has also entered into such a contract with the Boston Housing Authority, and the Boston Housing Authority makes payments toward Mr. Street's contract rent under that contract each month. Mr. Street pays the amount of his contract rent that is remaining after the Boston Housing Authority's payments.

20. During the period from November 2023 through January 2025 during which the Defendants allege that Mr. Street fell behind on rent, the Property Manager Defendants received the full contract rent of $1,875 in full each month from Mr. Street and the Boston Housing Authority.

21. In fact, as of the end of November 2023, Mr. Street had a positive account balance and was owed a rent credit. The Boston Housing Authority and Mr. Street had together made payments over the years that brought him ahead on his contract rent. A copy of Mr. Street's account ledger, provided directly by the Defendants, for the period from 2016 through the end of November 2024, is included herewith as Exhibit 1. This account ledger shows the rent credit that Mr. Street held as of the end of November 2023.

22. Despite Mr. Street not owing any rent either for the period prior to November 2023 or at any time in 2024, Defendants collectively undertook actions to collect on amounts alleged as unpaid rent from Mr. Street. The Property Manager Defendants added several erroneous charges on his account ledger beginning in December 2023. They sent Mr. Street numerous incorrect past due rent notices. The Defendants eventually caused an eviction notice to be sent to Mr. Street. They also filed a formal eviction complaint in court. Copies of the past due rent notices, the eviction notice, and the formal eviction complaint are collected in chronological order and included herewith as Exhibit 2.

*The "Unpaid Rent" Notices, the Notice to Quit, and Mr. Street's Attempts to Rectify the Situation*

23. Mr. Street first learned that the Property Manager Defendants thought he was behind on rent in May 2024. This is when he received the first of a series of incorrect past due rent notices. The May 5, 2024 account statement provided to Mr. Street by the Property Manager Defendants said that he owed $1,527.83 in past due rent.

24. Contrary to this past due rent notice, the Property Manager Defendants had timely received the whole contract rent of $1,875 from the Boston Housing Authority and Mr. Street at the beginning of May 2024.

25. Inexplicably, at this same time, the Property Manager Defendants' own ledger stated that he owed a different, false amount—$1,148.83.

26. In reality, Mr. Street did not owe any rent at this time.

27. Soon after receiving this first past due rent notice, Mr. Street went to an on-site management office at Highland House Apartments in order to speak with a representative of the Property Manager Defendants to attempt to correct the error.

28. Mr. Street spoke with two staff members of the Property Manager Defendants and explained to them that he was not behind on rent.

29. At least one of the staff members acknowledged that Mr. Street, in fact, "always paid [his] rent on time."

30. Still, staff members insisted that, because their records reflected a rental balance, Mr. Street had to pay a substantial amount in alleged arrears in order to bring his account current.

31. Due to his fixed income, making this payment was impossible for Mr. Street.

32. Mr. Street asked the staff members repeatedly where this past due balance came from, and no explanation was provided.

33. During this same meeting, a younger male employee of the Property Manager Defendants then confronted Mr. Street and demanded that he leave the office immediately.

34. Mr. Street, an elder with physical limitations, believed that, due to the manner in which this younger male employee approached him and spoke to him, he would be physically harmed if he did not leave the office.

35. Mr. Street left the on-site management office that day believing that he would be further retaliated against, or even physically harmed in some way, if he brought up the issue of the past due balance directly with staff members of the Property Manager Defendants again.

36. Mr. Street left the management office feeling concerned, anxious, fearful, and distressed. He felt intimated against pursuing any further dispute over the unpaid rent directly with the Property Manger Defendants on his own.

37. Mr. Street then received a second past due rent notice stating that he owed $1,148.83 on May 21, 2024.

38. There was no explanation as to why this total amount was less than the amount alleged in the May 5, 2024 notice.

39. June came and, once again, the Property Manager Defendants timely received the whole contract rent of $1,875 from the Boston Housing Authority and Mr. Street at the beginning of June 2024.

40. Mr. Street nevertheless received two different conflicting "past due" rent notices, both dated June 10, 2024.

41. One June 10, 2024 notice said that he owed $0.

42. The other June 10, 2024 notice said that he owed $1,527.83.

43. There was no explanation as to how to reconcile these notices nor to how the total amount had again increased.

44. There was no explanation as to how to reconcile these amounts with the amount stated as unpaid on the Property Manager Defendant's ledger as of the end of June 2024—$3,023.83.

45. Yet again, the Property Manager Defendants timely received the whole contract rent of $1,875 from the Boston Housing Authority and Mr. Street at the beginning of July 2024.

46. However, on July 9, 2024, Mr. Street received another notice that said that he owed $428.73.

47. And, once again, there was no explanation as to how the total amount decreased by almost $1,000.

48. Believing that bringing this issue up with the Property Manager Defendants would not resolve the issue and instead would lead to further aggression from the staff, Mr. Street attempted to get assistance in advocating for himself from his case manager at the Boston Housing Authority.

49. Mr. Street's case manager at the Boston Housing Authority was unable to assist him in clearing up the erroneous past due balance that the Property Manager Defendants alleged that he owed.

50. On July 19, 2024, Mr. Street received an eviction notice—a notice to quit.

51. The notice to quit told Mr. Street that he must leave his home of over fifteen (15) years if he did not bring his account current by the end of August 2024.

52. Due to his fixed income, Mr. Street did not have the funds to pay the arrears that the Defendants falsely claimed he owed.

53. Mr. Street also could not ascertain the exact amount the Property Manager Defendants claimed that he owed, due to the amount fluctuating inexplicably across multiple notices.

54. This notice to quit was signed by a representative of the Property Manager Defendants.

55. This notice to quit bore the same formatting and style of language as notices to quit signed by attorneys from SLG LLP and filed publicly in other cases. Based on this fact, Mr. Street alleges upon information and belief that SLG LLP assisted in drafting the notice to quit.

56. The notice to quit alleged unpaid rent in the amount of $1,821.03.

57. There was no explanation as to how the total amount of alleged arrears increased by almost $1,400 in the ten days since the July 9, 2024 notice.

58. There was no explanation as to why this amount of arrears diverged from that in the Property Manager Defendants' own ledger—$1,934.73.

59. The ledger included within the body of the notice to quit stated that Mr. Street owed rent in the following manner: March 2024 in the amount of $315.03, April 2024 in the amount of $379.00, May 2024 in the amount of $379.00, June 2024 in the amount of $379.00, and July 2024 in the amount of $369.00.

60. Contrary to the notice to quit, Highland House Management had received the total contract rent of $1,875 per month for each of these months.

61. Mr. Street was not behind on his rent for any of the stated months when this notice to quit was sent.

62. Mr. Street became significantly distressed after receiving this notice to quit and feared prompt eviction from his home over amounts that he did not actually owe.

*The Eviction Case and the Present*

63. Despite the fact that Mr. Street was not behind on his rent, on or about October 1, 2024, Property Manager Defendants, by and through counsel, SLG LLP, filed a summary process summons and complaint in the Metro South Housing Court.

64. On October 15, 2024, the eviction case was entered into the Metro South Housing Court as docket number 24H82SP02884.

65. The summary process summons and complaint explicitly sought $2,190.03 in unpaid rent and possession of his home.

66. The alleged unpaid rent on the summary process summons and complaint was listed in the same manner as that which was included in the notice to quit, with the addition of $369.00 alleged as unpaid rent for September 2024.

67. Mr. Street still was not behind on his rent when the eviction case was filed by the
Property Manager Defendants and SLG LLP.

68. Mr. Street became even more distressed after receiving the summons and complaint. He
believed that he would be removed from his long-time home because of these false
allegations made by the Property Manager Defendants and SLG LLP.

69. Mr. Street sought legal assistance to try to defend himself in this eviction case.

70. On November 6, 2024, a paralegal advocate from Greater Boston Legal Services acting
on behalf of Mr. Street asked SLG LLP for a copy of his rent ledger in order to validate
the alleged amounts owed.

71. On November 13, 2025, an attorney, acting on behalf of SLG LLP and the Property
Manager Defendants, responded and provided a copy of the Property Manager
Defendant's ledger.

72. The ledger provided by SLG LLP and the Property Manager Defendants had clear and
obvious errors on its face. It also directly contradicted the amounts owed and the specific
months that the SLG LLP and the Property Manager Defendants claimed that there was
rent owed in past due rent notices, the notice to quit, and the eviction lawsuit.

73. On November 19, 2025, a paralegal advocate acting on behalf of Mr. Street reached out
to the attorney at SLG LLP and explained the clear misrepresentations of rent owed by
Mr. Street.

74. On November 26, 2024, Mr. Street and his paralegal advocate went to Metro South
Housing Court for a mediation and once again explained to this attorney, who was acting
on behalf of SLG LLP and the Property Manager Defendants, the clear errors.

75. Through mutual agreement of the parties, the first court event was continued to January 28, 2025.

76. On December 10, 2024, nearly two and a half months after Mr. Street was served with the summary process summons and complaint, and more than seven months after the Property Manager Defendants first began to falsely dun him, the parties entered into a stipulation to dismiss the case, including any counterclaims therein, without prejudice.

77. On January 28, 2025, the stipulation was accepted by the Metro South Housing Court, and the eviction case was formally dismissed by the Court.

*The Property Manager Defendants' Misrepresentations of and False Statements as to Mr. Street's Rental Account Balance*

78. Mr. Street and the Boston Housing Authority together paid his rent in full throughout the entire period from May 2024 through January 2025.

79. Property Manager Defendants relied upon their own records when engaging counsel to bring the October 2024 eviction case against Mr. Street.

80. There were obvious false statements and misrepresentations that were apparent on the face of the rent ledger and other records. Anyone examining the ledger, or who compared it to other available records, knew or should have known that the ledger contained inconsistencies and errors that meant the ledger could not be relied upon.

81. There were also further false statements and misrepresentations contained within the Property Manager Defendants' records that would become obvious when compared with Mr. Street's own payment records. Specifically, Mr. Street paid rent during months for which no payment is acknowledged on the ledger.

82. There were also clear inconsistencies between the amounts allegedly owed by Mr. Street, according to the rent ledger and according to the various past due rent notices the Property Manager Defendants sent to Mr. Street. Anyone who compared the past due rent notices to the rent ledger would have noted the clear inconsistencies between the two sets of records, and indeed the internal inconsistencies among the various past due rent notices.

83. Finally, there are unlawfully imposed late fees contained within the ledger. These late fees were improper for two reasons.

    a. First, Mr. Street was never late on his rent, even according to his ledger. Under Massachusetts law, late fees may only be charged if rent is received 30 or more days past the agreed upon the date in the lease. Mr. Street never paid his rent 30 or more days late, even according to the Property Manager Defendants' own records.

    b. Second, even had Mr. Street been late on his rent, late fees cannot be recovered in the type of eviction case that the Property Manager Defendants brought to evict Mr. Street pursuant to Mass. Gen. Laws c. 239, § 2.

84. Anyone who examined the ledger would have noted that the amounts alleged to be owed by Mr. Street as late fees were doubly uncollectable in the eviction case filed against him.

85. Mr. Street was, in fact, ahead on his rent and had a positive rental credit before these false and misrepresented charges occurred.

86. The false statements and misrepresentations which underlie the actions Property Manager Defendants undertook to collect on alleged past due rent from Mr. Street are as follows:

a. In December 2023, according to the rent ledger, Mr. Street was erroneously
    charged $1,439.

    i. Mr. Street was charged twice for the portion of his rent that was paid each
    month by the Boston Housing Authority under the terms of the Section 8
    Program, in an amount totaling $2,935.

    ii. The Boston Housing Authority paid their December 2023 portion in the
    amount of $1,496, but the second charge for an additional $1,439 was
    never actually removed from his account.

    iii. The false nature of this charge was obvious on the face of the ledger.

b. In January 2024, according to the rent ledger, Mr. Street was erroneously charged
    $285.

    i. Highland House Management added a $285 charge to Mr. Street's ledger
    in January 2024.

    ii. This charge contained the notation that Mr. Street was "incorrectly
    charged [his portion of the rent] from July–November 2023" and was
    "undercharged $57 per month."

    iii. Mr. Street was never undercharged, and he was not behind on any of these
    months.

    iv. During these five months, Property Manager Defendants received
    $379/month from Mr. Street and $1,496/month from the Boston Housing
    Authority—$1,875/month in total.

    v. Property Manager Defendants thus received the full contract rent during
    these months from July to November 2023.

      vi.  The false nature of this charge was obvious on the face of the ledger.

c.  In June 2024, Mr. Street's payment of $379 was not applied to his account.

      i.  Highland House Management cashed but did not apply the value of Mr. Street's timely rent payment to his account.

      ii.  Mr. Street has a copy of the cleared check for this month in the amount of $379.

d.  In July 2024, Mr. Street's payment of $369 was not applied to his account.

      i.  Property Manager Defendants cashed but did not apply the value of Mr. Street's timely rent payment in July 2024.

      ii.  Property Manager Defendants failed to account for Mr. Street's July and August 2024 rent payments in their records.

      iii.  The ledger contains the notation "July & August Rent[,]" but only the value of one month of rent—$369—was credited.

      iv.  Mr. Street paid $369 for both July and August rent in two separate – and cashed—checks for $369 each.

      v.  Mr. Street has proof of both checks for July and August rent being cashed.

e.  Per the rent ledger, Mr. Street was unlawfully charged late fees, despite not being in arrears of his rent for 30 days or greater pursuant to Mass. Gen. Laws c. 186, § 15B(c)—$37.90 per month for February, March, and June 2024 and $36.90 per month from July through October 2024, totaling $261.30.

      i.  The February late fee was charged on March 1, 2024, despite February rent being received in full on January 30, 2024.

ii. The March late fee was charged on April 1, 2024, despite March rent being received in full on March 1, 2024.

iii. The June late fee was charged on July 1, 2024, despite June rent being received in full on May 30, 2024.

iv. The July late fee was charged on August 1, 2024, despite July rent being received in full on June 28, 2024

v. The August late fee was charged on September 3, 2024, despite August rent being received in full on August 2, 2024.

vi. The September late fee was charged on October 1, 2024, despite September rent being received in full on September 3, 2024.

vii. The October late fee was charged on November 1, 2024, despite October rent being received in full on October 1, 2024.

f. The internal inconsistencies between the various records kept by Defendants of the amounts Mr. Street supposedly owed comprised further false statements.

i. Mr. Street received several past due rent notices, a notice to quit, and a summary process summons and complaint from the Defendants.

ii. The past due rent notices were both internally inconsistent—indeed, at one point Mr. Street received two past due rent notices with the same date alleging different amounts owed—and inconsistent with the rent ledger.

iii. Although the notice to quit and summary process summons and complaint were consistent with each other, they were not consistent with the past due rent notices.

iv.  None of the records relied upon by the Defendants were consistent with Mr. Street's actual payment history, the amounts due under Mr. Street's lease, or the law regarding what could be legally charged to or recovered from Mr. Street.

87. In total, 268 total days passed between when Mr. Street received the first past due rent notice from the Property Manager Defendants on May 5, 2024, and when the eviction case was formally dismissed on January 28, 2025.

88. Following dismissal of the eviction case and to the present day, the Property Manager Defendants have failed to consistently or accurately credit to Mr. Street's online rental account the value of the payments that he makes.

89. To the present day, the Property Manager Defendants have further failed to credit Mr. Street with the value of the positive balance that Mr. Street held before the Property Manager Defendants began to falsely misrepresent his account balance in December 2023.

*SLG LLP's Knowing Attempts to Collect an Amount of Unpaid Rent that Was Not Lawfully Owed*

90. Per ¶ 78-89 herein, the Property Manager Defendants pursued Mr. Street's eviction for non-payment of rent, using the services of SLG LLP to attempt to collect this unlawful amount and to evict him from his home.

91. SLG LLP brought an eviction case against Mr. Street alleging unpaid rent in the following amounts:

| Month | Amount Alleged as Owed per SLG LLP's summons and complaint |
|---|---|
| March 2024 | $315.03 |

| | |
|---|---|
| April 2024 | $379.00 |
| May 2024 | $379.00 |
| June 2024 | $379.00 |
| July 2024 | $369.00 |
| September 2024 | $369.00 |

TO: DEFENDANT(S)/TENANT(S)/OCCUPANT(S): Robert Street
ADDRESS: 11 Highland Glen Drive, Unit 31          CITY/TOWN: Randolph, MA          ZIP: 02368
EMAIL: _____          TELEPHONE: _____

**YOU WILL BE SERVED WITH A NOTICE OF THE DATE, TIME AND MANNER OF YOUR HEARING WHEN IT IS SCHEDULED BY THE COURT.**

You are hereby summoned to appear at a hearing before a Judge of the Court to defend against the complaint of:
PLAINTIFF/LANDLORD/LESSOR/OWNER:
GM Highland House LLC and GM MC Highland House LLC
of STREET: 41 Highland Avenue          CITY/TOWN: Randolph, MA          ZIP: 02368
that you occupy the premises at 11 Highland Glen Drive, Unit 31, Randolph, MA
being within the judicial district of this Court, unlawfully and against the right of said Plaintiff/Landlord/Owner
because: NON-PAYMENT OF RENT

and further, that $2190.03 _____ rent is owed according to the following account:
ACCOUNT ANNEXED (itemize)
2024: Mar-$315.03 Apr-$379.00 May-$379.00 June-$379.00

July-$369.00 Sept-$369.00 plus any monies that become

due and owing during the pendency of this action.

Lisa M. Gouveia, Esquire
Printed Name of Plaintiff or Attorney

*Lisa M. Gouveia*
Signature of Plaintiff or Attorney

25 Braintree Hill Off. Pk. Ste. 205, Braintree, MA 02184
Address of Plaintiff or Attorney

lgouveia@slglegalgroup.com
Email of Plaintiff or Attorney

781-843-7700          658954
Telephone Number          BBO#

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT**
If you do not file and serve an answer, or if you do not defend at the time of the trial, Judgment may be entered against you for possession and the rent as requested in the complaint. Please see the Notice to Defendant section on the back side of this page.

92. Upon information and belief, SLG LLP relied upon a rent ledger that, on its face, showed the following amounts of rent being timely paid in full by Mr. Street and the Boston Housing Authority ("BHA"):

| Month | Paid by Mr. Street | Paid by BHA | Total Paid | Total Owed |
|---|---|---|---|---|
| March 2024 | $379 | $1,496 | $1,875 | $0 |
| April 2024 | $379 | $1,469 | $1,875 | $0 |

| May 2024 | $379 | $1,496 | $1,875 | $0 |
|----------|------|--------|--------|-----|

| 03/01/24 | | Housing and Urban Development | | 1,496.00 | 2,569.03 |
|----------|---|-------------------------------|---|----------|----------|
| 03/01/24 | | Rent Charge | | 379.00 | 2,948.03 |
| 03/01/24 | Web Pay CHK | Payment Received | Paid By: Robert Street (bobsteel105@verizon.net). | -379.00 | 2,569.03 |
| 03/01/24 | | Late Charge | February Late Charge | 37.90 | 2,606.93 |
| 03/01/24 | DD 319041 | Payment Received | BHA HAP 03/24 | -1,496.00 | 1,110.93 |
| 04/01/24 | | Housing and Urban Development | | 1,496.00 | 2,606.93 |
| 04/01/24 | | Rent Charge | | 379.00 | 2,985.93 |
| 04/01/24 | Web Pay CHK | Payment Received | Paid By: Robert Street (bobsteel105@verizon.net). | -379.00 | 2,606.93 |
| 04/01/24 | DD 143505 | Payment Received | BHA Housing HUD Payment 04/24 | -1,496.00 | 1,110.93 |
| 04/01/24 | | Late Charge | March Late Fee | 37.90 | 1,148.83 |
| 05/01/24 | | Housing and Urban Development | | 1,496.00 | 2,644.83 |

| Transactions | 11/12/24 11:47 PM | Page 7 of 8 | rentmanager.com - property management systems | rev.12.240905 |
|---|---|---|---|---|

| 05/01/24 | | Rent Charge | | 379.00 | 3,023.83 |
|----------|---|-------------|---|--------|----------|
| 05/01/24 | ECK - 1651 | Payment Received | May Rent 2024 | -379.00 | 2,644.83 |
| 05/01/24 | 143505 | Payment Received | BHA May HUD 2024 | -1,496.00 | 1,148.83 |

93. SLG LLP knew that Mr. Street was not behind on rent during the months of March, April, and May of 2024.[6]

94. Any review—or at least any reasonable review—of the amounts that the Property Manager Defendants collected from Mr. Street per the Property Manager Defendants' own ledger reveal that the Property Manager Defendants received the full contract rent of $1,875/month during the months of March, April, and May of 2024.

---

[6] While this ledger allegedly shows an account balance as of the end of March 2024 and carrying forward, erroneous charges led to the accumulation of this alleged balance during these months. This is explained in ¶86 herein. Many of these erroneous charges—which consisted of a double charge for the portion of rent payable by Section 8, unexplained "extra" charges to Mr. Street, and unlawful late charges—were obvious on the face of the ledger. When these erroneous charges are accounted for, Mr. Street actually had a positive rent credit. Further, Mr. Street was not, in fact, behind on rent in June, July, or September 2024, in spite of the statements on the Property Manager Defendant's ledger. Mr. Street had paid rent for these months, but the Property Manager Defendants did not account for these payments on his ledger.

95. Despite the months of March, April, and May of 2024 clearly being paid in full on the Property Manager Defendants' rent ledger, SLG LLP falsely alleged that Mr. Street owed these amounts.

96. Further, upon information and belief, SLG LLP had access to the Property Manager Defendants' past due notices that stated inconsistent and internally contradictory balances—amounts which do not align with the balance that SLG LLP sought to collect in its summary process summons and complaint.

| Month | Total Amount Alleged as Owed by SLG LLP in the Summons and Complaint | Total Amount Alleged as Owed by Property Manager Defendants in Past Due Notices |
|---|---|---|
| March 2024 | $315.03 | N/A |
| April 2024 | $694.03 | N/A |
| May 2024 | $1,073.03 | $1,148.83 |
| June 2024 | $1,452.03 | $0 and $1,527.83 |
| July 2024 | $1,821.03 | $428.73 |
| September 2024 | $2,190.03 | N/A |

97. Finally, SLG LLP knew that the amount that it sought to collect from Mr. Street in its eviction case for non-payment of rent included unlawful late fees.

98. SLG LLP knowingly misrepresented Mr. Street's alleged amount owed for non-payment of rent by seeking to collect late fees not authorized by law to be collected in summary process pursuant to Mass. Gen. Laws c. 239, § 2.

99. With the aforementioned errors on the ledger being known and obvious, SLG LLP failed to review and verify in any—or at least in any reasonable manner—the amounts

comprising the $2,190.03 in unpaid rent which it sought from Mr. Street in its eviction case.

100.    SLG LLP willfully ignored the errors on the ledger and in the past due notices when it failed to verify the amounts making up the alleged $2,190.03 that Mr. Street owed as unpaid rent.

101.    Comprising the majority of the alleged $2,190.03 in unpaid rent stated in SLG LLP's Summons and Complaint were erroneous charges that were easily ascertainable on the face of the Property Manager Defendants' ledger.[7]

    a.  $1,439—a patent double charge for the portion of Mr. Street's rent paid by the Boston Housing Authority in December 2023

    b.  $285—patently excessive charges for Mr. Street's contract rent during the months of July, August, September, October, and November 2023

    c.  $261.30—late charges based on amounts not actually owed and which could not be lawfully recovered in a Summary Process case.

102.    Any review—or at least any reasonable review—of the amounts that the Property Manager Defendants charged Mr. Street reveals that the Property Manager sought to collect amounts above and beyond the contract rent of $1,875 per month during the months relevant to the eviction case.

103.    Any review—or at least any reasonable review—of the Property Manager Defendants' ledger reveals that Mr. Street's alleged arrears were the result only of facially erroneous charges.

---

[7] While these were not the only errors on the Property Manager Defendant's ledger, these are the errors that were patently obvious upon a facial review of the ledger.

104.    Further any review—or at least any reasonable review—of the Property Manager Defendants' past due notices reveals that there were internal accounting inconsistencies that call into question the veracity of all of the amounts that the Property Manager Defendants alleged as owed.

105.    In total, the eviction case remained pending for 119 days from the day that Mr. Street was first served with the Summary process summons and complaint until the day when the case was formally dismissed by the Metro South Housing Court.

*Mr. Street's Injuries—Invasion of Privacy, Financial Loss, and Emotional and Physical Distress*

106.    The Defendants' actions in sending past due rent notices and a formal eviction notice, followed by the bringing and maintaining of an eviction case against Mr. Street, intruded on his privacy, caused him out-of-pocket financial loss, and caused him emotional and physical distress.

107.    Mr. Street received repeated, erroneous past due rent notices left conspicuously in the door of his apartment in a large residential complex.

108.    These notices were left in a manner that would allow for anyone passing by to access and read their contents.

109.    Mr. Street also received a notice to quit left on his door and sent to him in the mail; he received a summary process summons and complaint in the same manner.

110.    Further, when the Defendants caused the notice to quit and summary process summons and complaint to be filed, a publicly accessible record of an eviction for non-payment of rent was created and could be accessed in person via the Metro South Housing Court Clerk's Office or online via Masscourts.org.

111.     Receiving multiple, erroneous and unwanted notices in this manner invaded Mr. Street's right to privacy and seclusion when he, in fact, was under no obligation to respond to correspondence sent by the Defendants who were attempting to collect an unlawful amount.

112.     The receipt of these repeated notices, including the eviction complaint, caused Mr. Street to take significant time out of his day to attempt to rectify the situation.

113.     The notice to quit itself misrepresented the amount of Mr. Street's alleged rental arrears which prejudiced him against any ability to cure non-payment of rent pursuant to Mass. Gen. Laws c. 186, § 11A.[8]

114.     In the process of responding to the eviction case brought by the Defendants that followed, Mr. Street had to pay a hired driver $60 to take him to a meeting with his legal services advocate in Boston.

115.     Mr. Street further had to pay a hired driver $20 to attend a court event in the eviction case in Canton.

116.     As an elder on limited income, Mr. Street acutely felt the unnecessary expenditure of $80 – which is over 10% of his monthly income remaining after he pays his rent.

117.     Mr. Street also had a rent credit, which was eliminated completely due to the Property Manager Defendants' false statements and misrepresentations as to his account balance.[9]

---

[8] The exercise of the right to cure presumes that Mr. Street did, in fact, owe some amount of rent at the time when he received the notice to quit for non-payment of rent. He did not, in fact, owe any unpaid rent at that time.

[9] Under the terms of the Section 8 Program, any excess rent paid by the Housing Authority and Mr. Street toward the contract rent must be returned to Mr. Street directly. See 24 CFR 982.451(b)(3) (landlord "may not demand or accept any rent payment from the tenant in excess of [the contract rent], and must immediately return any excess rent payment to the tenant.").

118.    This rent credit, which Mr. Street was entitled to and may have drawn upon as needed, has disappeared from Mr. Street's account and has not been reimbursed.

119.    Beginning on the day when he received the May 5, 2024 past due notice and continuing through January 28, 2025, when the eviction case was formally dismissed, Mr. Street experienced profound emotional distress.

120.    Mr. Street feared what would happen if he did not resolve the issue of the Defendants' allegations that he was behind on rent.

121.    Due to his limited, fixed income, there was no way for Mr. Street to pay the amount that Defendants alleged he owed.

122.    Mr. Street feared that he would be forcibly removed from his home and permanently lose his housing subsidy because of the Defendants' unfounded allegations of non-payment of rent.

123.    Mr. Street experienced distinct nervousness, stress, and anxiety, beyond that which he may have otherwise felt at the time, because of the Defendants' repeated accusations that he owed past due rent during months that he did not actually owe and the actions undertaken as a result.

124.    Because of this nervousness, stress, and anxiety, Mr. Street began to do everyday activities differently.

125.    Around this same time, Mr. Street also began to develop a significant tremor as a result of the psychological and emotional distress that came from his fear of being evicted by the Defendants for amounts that he did not actually owe.

   a.    When Mr. Street would think of the Defendants' actions, his hands and body would shake uncontrollably.

b. As a result of this tremor, Mr. Street was unable to engage in his beloved hobbies in the same way as previously.

c. One of Mr. Street's most cherished hobbies is painting—specifically, he loves painting—and yet he was unable to paint in the same way as previously.

d. Mr. Street was emotionally devastated and deeply distressed as a result of being unable to express himself in this way as an artist.

e. Further, Mr. Street's coordination suffered due to the tremor, and he found himself at times unable to complete the physical therapy exercises for his spinal conditions that he was otherwise able to do previously.

126.    To the present day, Mr. Street continues to experience significant emotional distress each time he thinks about SLG LLP's eviction case, and each time he has to deal with the ongoing accounting practices of the Property Manager Defendants. He is afraid that, once again, the Defendants will seek his eviction for amounts he does not owe.

*Defendants' Refusal to Tender Reasonable Settlement Prior to Litigation*

127.    On January 28, 2025, Defendants' eviction lawsuit was formally dismissed by the Metro South Housing Court. The dismissal was without prejudice as to all claims asserted therein, including any counterclaims filed by Mr. Street.

128.    On March 6, 2025, Mr. Street, through counsel, then sent demands for relief to all Defendants via certified mail, return receipt requested, with an additional copy sent via first class mail, which reasonably described unfair and deceptive acts and practices complained of and injuries suffered.

129.    Defendants GM Highland House LLC, GM MC Highland House LLC, and CT Management LLC received Mr. Street's demand letter, and, while they provided a written

response to the letter, they failed to make a reasonable written tender of settlement to Mr. Street within 30 days.

130.  Defendants GM Highland House LLC, GM MC Highland House LLC, and CT Management LLC's failure to provide a reasonable tender of settlement was in bad faith because GM Highland House LLC, GM MC Highland House LLC, and CT Management LLC had knowledge or reason to know that their conduct violated M.G.L. c. 93A, § 2.

## **CAUSES OF ACTION**

### **COUNT ONE**
**Violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692**
*Against SLG LLP*

131.  Plaintiff repeats and realleges all preceding allegations as if fully set forth herein.

*SLG LLP as a debt collector*

132.  The FDCPA defines a debt collector as any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

133.  An attorney, who "regularly" through litigation tries to collect consumer debts is a "debt collector" under the FDCPA. See Heintz v. Jenkins, 514 U.S. 291 (1995).

134.  SLG LLP has maintained hundreds (if not thousands) of cases alleging non-payment of rent in various Housing Courts across the Commonwealth, including dozens against residents of Highland House Apartments, in many of which SLG LLP directly identified that it was "attempt[ing] to collect a debt" in its eviction notices.

135.  SLG LLP is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) because it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

*SLG LLP's collection activities*

136.    Actions undertaken to collect past due rent from a consumer, through collection or eviction notices, qualify as collection of a debt for the purposes of the FDCPA. See Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998).

137.    The judicial filing of an eviction case for non-payment of rent against a consumer is itself a debt collection activity under the FDCPA. See, e.g., O'Connor v. Nantucket Bank, 992 F.Supp.2d 24 (D. Mass. 2014).

138.    Mr. Street is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3), because Defendants alleged that he accrued past due rent for his primary residence, which is a debt for personal, family, or household purposes.

139.    SLG LLP's actions in serving, filing, and maintaining the summary process summons and complaint in the Metro South Housing Court, known as *GM Highland House LLC and GM MC Highland House LLC v. Robert Street* (docket number 24H82SP02884), and seeking in this lawsuit to recover alleged amounts owed as unpaid rent, was a debt collection activity.

*SLG LLP's prohibited conduct—misrepresentation of the amount of an alleged debt*

140.    Under the FDCPA, "[a] debt collector must not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of ... the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A).

141.    SLG LLP filed a summary process summons and complaint against Mr. Street that sought $2,190.03 in unpaid rent and possession of his home.

142.     The summary process summons and complaint contained allegations of unpaid rent in the following amounts for the following months: March 2024 in the amount of $315.03, April 2024 in the amount of $379.00, May 2024 in the amount of $379.00, June 2024 in the amount of $379.00, July 2024 in the amount of $369.00, and September 2024 in the amount of $369.00.

143.     Mr. Street was not behind on his rent during the stated months when SLG LLP filed this case; he and the Boston Housing Authority had paid his rent of $1,875 in full during all of these months where SLG LLP alleged that he had not.

144.     In fact, Property Manager Defendants' own ledger, which SLG LLP had in its possession while it maintained the eviction case, showed payments in full received in March 2024, April 2024, and May 2024.

145.     Property Manager Defendants' ledger on its face contained patently false statements as to the amount of rent being charged to Mr. Street, including facially erroneous charges of $1,496 in December 2023 and $285 in January 2024.

146.     SLG LLP undertook no reasonable efforts to verify and ascertain the true amount of the alleged debt, nor the Property Management Defendants' entitlement to this alleged debt, before seeking collection of the alleged debt in its eviction lawsuit for non-payment of rent.

147.     SLG LLP filed its case with knowledge that Mr. Street did not in fact owe rent during all of the months that it alleged that he owed unpaid rent.

*SLG LLP's prohibited conduct—false or deceptive means of collecting on a debt*

148.    Under the FDCPA, a debt collector must not engage in the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

149.    SLG LLP deceptively conveyed the amount of Mr. Street's alleged debt, and therefore engaged in a deceptive means of collecting upon it, by failing to accurately state the correct amount of rent that was unpaid for each of the months listed in its Summary process summons and complaint.

150.    Despite SLG LLP's claim to the contrary in its eviction lawsuit, Property Manager Defendant's own account ledger acknowledges payment in full of Mr. Street's rent for the months of March, April, May, and September 2024.[10]

151.    SLG LLP's actions in sending a summons and complaint that stated unpaid rent from months where there was patently no rent owed demonstrated a willful and knowing misrepresentation of the amount of alleged unpaid rent that the Property Manager Defendants themselves alleged as unpaid.

*SLG LLP's prohibited conduct—attempting to collect on a debt in a manner which has the natural consequence of harassment or oppression*

152.    Under the FDCPA, a debt collector must not engage "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

153.    SLG LLP's actions in serving, filing, and maintaining a summary process case for non-payment of rent which expressly claimed unpaid rent during months in which Mr.

---

[10] Despite Mr. Street having clear proof of rent payments for the months of June and July 2024, this was not, in fact, acknowledged on the Property Manager Defendants' own account ledger. However, Mr. Street has proof of cleared checks for these payments, and the Property Manager Defendants have later acknowledged receipt of these payments.

Street paid his rent in full was conduct which had the natural consequence of harassing, oppressing, or abusing Mr. Street.

*SLG LLP's prohibited conduct—attempting to collect on a debt not authorized by the agreement creating the debt or permitted by law*

154.    Under the FDCPA, a debt collector must not engage in "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

155.    During all the months for which SLG LLP sought to collect on unpaid rent, Mr. Street and the Boston Housing Authority paid the full amount which could lawfully be collected under the terms of Mr. Street's tenancy. At no time whatsoever, then, was SLG LLP legally entitled to collect on any amount of unpaid rent.

156.    Further, SLG LLP sought to collect amounts allegedly owed as late fees, accumulated based on the entirely false amount that Mr. Street was alleged to owe, an action that was not in any way expressly authorized by the terms of Mr. Street's tenancy nor permitted by law.

157.    SLG LLP sought to collect late fees throughout a summary process action for non-payment of rent despite clear statutory language stating that the only amounts that can be claimed in summary process actions are rent and use and occupancy—not additional fees. See Mass. Gen. Laws c. 29, § 2.

158.    SLG LLP's bringing and maintaining of an eviction lawsuit alleging amounts that were not lawfully owed, including late fees, was an attempt to collect on an unauthorized and unlawful debt.

**COUNT TWO**
**Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A § 9**
*Against Property Manager Defendants*

159.     Plaintiff repeats and realleges all preceding allegations as if fully set forth herein.

160.     As detailed herein, Property Manager Defendants each engaged in numerous

unfair or deceptive acts or practices.

161.     At all times relevant to this Complaint, Property Manager Defendants each were

engaged in "trade or commerce" in Massachusetts within the scope of Mass. Gen. Laws

c. 93A, § 1.

162.     Upon receipt of a demand for relief delivered via certified mail, return receipt

requested, Property Manager Defendants each individually failed to tender a reasonable

offer of settlement, and such failure was in bad faith where Property Manager Defendants

each had knowledge of reason to know that their conduct violated Mass. Gen. Laws c.

93A.

163.     As a direct and proximate result of Property Manager Defendants' violations of

Mass. Gen. Laws c. 93A, Plaintiff has suffered harm.

*Misrepresentation of the character of the alleged debt*

164.     The Massachusetts Attorney General's fair debt collection regulations specifically

protect consumers against creditors engaging in "[a]ny knowingly false or misleading

representation in any communication as to the character, extent or amount of the debt, or

as to its status in any legal proceeding[.]" 940 CMR 7.07(2). A violation of this

regulatory provision is considered an unfair and deceptive practice in violation of M.G.L.

c. 93A, § 2.

165.     Under the Massachusetts fair debt collection statute, a creditor may not "attempt to collect [a] debt in an unfair, deceptive or unreasonable manner." M.G.L. c. 93, § 49. A violation of this regulatory provision is an unfair and deceptive practice in violation of M.G.L. c. 93A, § 2.

166.     Property Manager Defendants are each creditors within the meaning of 940 CMR 7.01 and Mass. Gen. Laws c. 93, § 49, in that they are "engaged in collecting a debt owed or alleged to be owed to it by a debtor."

167.     Mr. Street is a "debtor" within the meaning of 940 CMR 7.03 because Property Manager Defendants alleged that he was personally liable for a consumer debt incurred primarily for personal, family, or household purposes.

168.     The Property Manger Defendants' notices sent on May 5, May 21, June 10, July 9, and July 19, 2024 falsely misrepresented the amount that Mr. Street owed.

169.     Not only were the notices false but also they were misleading in the manner in which the alleged unpaid balance fluctuated in inexplicable ways, increasing and decreasing over time with no sensible explanation as to how the amounts were calculated.

170.     In fact, the two June 10, 2024, notices entirely conflicted with one another—with one notice alleging $0.00 owed and the other notice alleging $1,527.83 owed.

171.     The Property Manager Defendants made these false misrepresentations knowingly.

　　　a.　The false and misrepresented nature of the amounts were obvious from looking at the face of the notices themselves and when looking at clear errors on the face of the Property Manager Defendants' own account ledger.

b.    The false and misrepresented nature of the amounts were obvious where the Property Manager Defendants deposited rent checks that were never actually accounted for on their own ledger.

c.    The Property Manager Defendants knowingly continued with their false misrepresentation of the amount that Mr. Street allegedly owed, even after Mr. Street attempted to point out the false statements in the notices that the Property manager Defendants had sent him.

172.    The Property Manager Defendants' knowingly false misrepresentation of the character, extent, and amount that Mr. Street allegedly owed was in violation of M.G.L. c. 93A, § 2.

*Breach of quiet enjoyment for seeking a judicial eviction based on false amounts of unpaid rent*

173.    The Massachusetts Attorney General's landlord-tenant regulations protect tenants against actions by residential landlords who "violate willfully any provisions of M.G.L. c. 186, § 14." 940 CMR 3.17(6)(f). The Massachusetts Appeals Court has affirmed that an attempt to evict a tenant for an amount not actually owed is interference with "quiet enjoyment" in violation of M.G.L. c. 186, § 14. See Homesavers Council Of Greenfield Gardens, Inc. v. Luz Sanchez, 70 Mass. App. Ct. 453 (2007). A violation of this regulatory provision is considered an unfair and deceptive practice in violation of M.G.L. c. 93A, § 2.

174.    The Property Manager Defendants sent Mr. Street notices alleging amounts of rent that he did not actually owe on six different days over three months—the last of which contained a formal termination of Mr. Street's tenancy for non-payment of rent.

175.     The Property Manager Defendants then engaged SLG LLP to file an eviction lawsuit on their behalf against Mr. Street, a case which Property Manager Defendants then maintained in order to collect unlawful amounts of unpaid rent and to improperly obtain possession of Mr. Street's home.

176.     Seeking Mr. Street's eviction based on unpaid rent for months and amounts that he did not actually owe was interference with Mr. Street's right to quietly enjoy his home and his tenancy.

177.     The Property Manager Defendants' willful interference with Mr. Street's quiet enjoyment in violation of M.G.L. c. 186, § 14 in this way was in violation of M.G.L. c. 93A, § 2.

*Imposition of unlawful late fees*

178.     The Massachusetts Attorney General's landlord-tenant regulations protect tenants against actions by residential landlords who "[i]mpose any interest or penalty for late payment or rent unless such payment is 30 days overdue." 940 CMR 3.17(6)(a). A violation of this regulatory provision is considered an unfair and deceptive practice in violation of M.G.L. c. 93A, § 2.

179.     Property Manager Defendants imposed unlawful late fees upon Mr. Street in the amount of $37.90 per month for February, March, and June 2024 and $36.90 per month from July through October 2024, totaling $261.30, despite Mr. Street at no point being in arrears of rent during these months (and certainly not thirty or more days in arrears).

180.     The Property Manager Defendants' imposition of these late fees was in violation of 940 CMR 3.17(6)(a) and M.G.L. c. 93A, § 2.

*Generally oppressive and unconscionable actions in seeking eviction for non-payment of rent where no rent was owed*

181.    The Massachusetts Attorney General's consumer protection regulations protect all

consumers against any action which is "oppressive or otherwise unconscionable in any

respect[.]" 940 CMR 3.16(1). See generally Linkage Corp. v. Trustees of Boston Univ.,

425 Mass. 1, 27 (1997) ("A practice is unfair if it is within the penumbra of some

common-law, statutory or other established concept of unfairness; is immoral, unethical,

oppressive, or unscrupulous; and causes substantial injury to [consumers].") (internal

marks omitted). A violation of this regulatory provision is considered an unfair and

deceptive practice in violation of M.G.L. c. 93A, § 2.

182.    Property Manager Defendants' actions in seeking the judicial eviction for non-

payment of rent of Mr. Street, an 81-year-old elder with disabilities who lives on fixed

income with the assistance of a housing subsidy, on the basis of patently false

misrepresentations of the amount owed, when Mr. Street's account was not in fact in

arrears, was oppressive and unconscionable in violation of M.G.L. c. 93A, § 2.

### **PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests:

1. A declaratory judgment that the practices complained of herein are unlawful under Mass.

   Gen. Laws c. 93A §§ 2 and 9 and/or 15 U.S.C. § 1692 et seq.;

2. A permanent injunction against SLG LLP, and their partners, officers, agents,

   representatives, employees, and successors, and all other persons acting in active concert

   with them which:

   a.  forbids them from initiating any eviction action, whether in the form of eviction

       notices, formal eviction filings, or any other eviction activities, which allege non-

payment of rent on the basis of amounts not actually owing per the ledgers provided by their residential landlord clients;

    b.  forbids them from initiating any eviction action, whether in the form of eviction notices, formal eviction filings, or any other eviction activities, in a manner which misrepresents the specific amount and months of rent owed;

    c.  forbids them from initiating any eviction action, whether in the form of eviction notices, formal eviction filings, or any other eviction activities, which allege non-payment of non-rent charges not authorized by law and/or allowed by law to be sought in a summary process lawsuit under Mass. Gen. Laws c. 239 § 2; and,

    d.  requires reasonable screening and verification procedures are put in place, and actually undertaken, to verify the amount of alleged unpaid rent before initiating any eviction action, whether in the form of eviction notices, formal eviction filings, or any other eviction activities.

3. A permanent injunction against Property Manager Defendants, and their partners, officers, agents, representatives, employees, and successors, and all other persons acting in active concert with them which:

    a.  forbids them from sending notices for past due amounts not actually owing;

    b.  forbids them from failing to accurately account within a reasonably prompt time after deposit of monies received the full value of such amounts received; and,

    c.  requires them to undertake reasonably prompt action to correct rental account ledgers that contain accounting errors pursuant to a reasonable corrective process.

4.  All damages sustained as a result of the Defendants' conduct, including financial, physical, emotional, and/or statutory damages, under c. 93A, §§ 2 and 9 and/or 15 U.S.C. § 1692 et seq.;

5.  Actual and exemplary (treble) damages for violations of Mass. Gen. Laws. c. 93A, §§ 2 and 9;

6.  Reasonable attorneys' fees, litigation expenses, and costs;

7.  Pre-judgment and post-judgment interest, as provided by law; and,

8.  Such other legal and equitable relief as this Court deems necessary, just, and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

/s/ Sean Ahern
Sean M.F. Ahern, Esq. BBO # 698446
Matthew W. Brooks, Esq. BBO # 693322
Kristen Bor-Zale, Esq. BBO # 705154
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617-603-1234
SAhern@gbls.org
MBrooks@gbls.org
KBorZale@gbls.org

Date: July 2, 2025